Number 2011-1076 IN RE LIEB Thank you, Your Honor, and may it please the Court. Is that the correct pronunciation? Marron. Yes. Mark Marron, representing the appellant, Fire, Crop, Science, through the inventors Fokker Lieb et al. We ask the Court today to reverse the Board of Patent Appeals and Interference's decision to uphold the examiner's rejection of the claims in the application at issue as obvious in view of the Steger reference. I would like to make three main points today, summarized as follows. First, the Board erred in holding that in order to rebut the prima facie case of obviousness, the appellants must compare the end products made from the claimed intermediates against the end products of the Steger reference without making a determination that Steger was the closest priority or closer than either Kraskov or Fischer. Second, the Board erred by failing to find that the Erdeland Declaration rebuts the prima facie case of obviousness because the claimed intermediates contribute the cause for the unexpectedly superior activity exhibited by the end products made from those claimed intermediates. And finally, the Board erred in distinguishing the present facts from the facts in the Magerlein case and by misapplying the law of Magerlein. In coming to their decision, the Board stated that the appellants must test against the end products of Steger without making a determination that Steger was closer than both Kraskov and Fischer. But didn't the Board find in the alternative that even if we weren't having to address Steger, that Kraskov disclosed an intermediate that embraces your claimed intermediate? No, Judge. The Court did say that Steger teaches generally an intermediate that would embrace the claimed intermediates if the appropriate selections were made. But there is nothing in Steger that suggests that those selections would produce any criticality in an end product. Kraskov does not embrace the claimed intermediate. This Court has consistently held that unexpected results can be used as the basis for rebutting a prime facie case, but those results must be shown against the closest prior art. This is from Baxter-Travanon. Henry Halliday says the same thing, as well as Ex Parte Humber, and the Board of Appeals embraced these decisions. The appellants urged that Kraskov or Fischer were closer prior art, yet the Board maintained that the results must be shown as compared with Steger. Therefore, in order to compel that the appellants test against the end products of Steger, the there was no finding from the Board of this fact. The Board could not make that determination because Steger is not closer prior art than both Kraskov and Fischer. We've discussed in detail in our brief why Steger is not closer prior art. It teaches equivalence of all positions two through six on that federal ring. Kraskov and Fischer fix two substituents at the same positions as in the presently claimed intermediate. The two and the four positions are fixed in Kraskov and Fischer. The third substituent is not fixed, it's floating. In the presently claimed intermediate, you have X, Y, and Z substitutions at the two, four, and the six positions. Those cannot change. No reason is given, and none is apparent why the fact that the appellants are claiming an intermediate permits the Board to insist on a comparison with a reference that is not as close as the references which the comparison was actually tested against. The Board then tries to distinguish Magerlein, but Magerlein does not contain any exception to the applications of the law set forth in Baxter-Travanal or Holiday. The Board erred in failing to find that the Erdeland Declaration rebuts this prima facie case. Show me where in that declaration that there is a direct connection drawn between the intermediate and the end product. Well, I will get to that, Your Honor, but I will say that the intermediate is the contributing cause of the unexpectedly superior activity. And where does the declaration specifically say that? Well, the declaration compares end product to end product. Correct. Okay. So there is no comparison of intermediate to intermediate or intermediate to end product because an intermediate does not have any inherent activity. I understand that, but the Board's concern was that you had not appropriately drawn the causal connection between any difference between the intermediates and the unexpected results in the end product. Yeah. So how do you draw that causal connection? First a visual examination. The products tested of the prior art, Kraskov and Fisher, differ in only one substituent from the end products made from the claimed intermediate, and it's in that sixth position, that alkyl or halogen at that position. That's clear from 15 plus comparisons in that declaration, that the only difference is in the XYZ substitution pattern. A skilled artisan would clearly say if there's only one difference in this molecule, and that difference is this one substitution, that the activity must, the unexpectedly superior activity of that end product must be due to that difference in the substitution. But you don't have a skilled artisan saying that in any declaration, do you? Well, we are relying on what a skilled artisan would understand from the art, but we didn't have a skilled artisan say on the record. We did not have the inventor or the author. Are you saying that if you have differences, unexpected results in the end product, that somehow the burden shifts to the Board to disprove that it was a function of the intermediary? Well, we have asserted that the contributing cause is the claimed intermediate. The basis for that is that a skilled artisan would clearly understand, based on the examination of these, of the experiments in the declaration, and in the fact that the substitution pattern in the claimed intermediate remains unchanged from the intermediate through the final product. Okay, so you're just asserting that, but again, the declaration itself that you're relying on doesn't say that. The declaration does not come out and say verbatim what you've just said. Or what you just said. Or what I just said. However, as I was saying, the nexus requirement is satisfied because a skilled artisan would reasonably ascribe that the superior results are due to the properties of the intermediate. That's the real test. It's what a skilled artisan reasonably ascribe, this activity of the claimed intermediates. In the Magerlein case, there's no evidence that the declaration in the Magerlein case, Judge O'Malley even says that the skilled artisan came out and said that this is the reason. The court actually does the analysis based on what a skilled artisan would reasonably ascribe. Additionally, the board acknowledges that the declaration demonstrates a positional activity in the end products of fishery. This is just another way of saying that the contributing cause of the superior results of the end products made from the claimed intermediates are due to the intermediate. How do you address your opponent's argument that in Magerlein there's a difference because there the petitioner actually established that there was no change from the intermediate to the end product? I would say that in our case, we've shown that there is no change between the intermediate and the end product with respect to that substitution pattern, which is the contributing cause again. Where have you established that there's no change during the conversion scheme from intermediate to end product? That would be in the application. I may have to come up with a site, but it is in our gray brief. You have the intermediate. It's on the end of page 7 through page 8 of the gray brief. You have our intermediate, acylated with an amino acid to form a compound. The compound is then condensed through intermolecular condensation in the presence of a diluent in a base. Intermolecular condensation, as a skilled chemist understands, is just changing the structure and then the byproduct would be something like a hydrogen or a water molecule. But as you can see, that XYZ substitution pattern remains in the same position from the intermediate to the final product. There's no change in that substitution pattern. And that's the point that we are trying to establish is that the intermediate is the contributing cause of the superior results of the end products. Again, the declaration clearly shows that end products having the claimed substitution pattern exhibit unexpectedly better than end products that do not have that claimed substitution pattern. Even the Erdeland Declaration. The Erdeland Declaration, yes, your honor. The board's decision rests on the fact simply that we have not compared the end products made from the presently claimed intermediates with end products of Stager. That was the issue which the board based their decision, but there's no reason under the prior art that is not as close as the prior art that was actually tested against. We believe that Magerlein is instructive in the present case. The board would like this, the board based its decision, again, trying to distinguish Magerlein under the facts, firstly, saying that in Magerlein, the claimed intermediate could only be used to make, excuse me, the board said that in Magerlein, the claimed intermediate can only be used to make the end product. Well, that's not true. The claimed intermediate in Magerlein could be used to make different end products, several different end products. There's no difference in the present case. The claimed intermediate here can be used, yes, to make end products of the present invention and products of Kraskov and Fisher or an end product, a theoretical end product of Stager. Second, the board's position with respect to this distinction of the claimed intermediates, that they have no practical usefulness except as used for a claimed intermediate. This is the exact same situation in the present case. There is no practical utility of the claimed intermediate, and that was at issue in Magerlein. It's also at issue in the present case. You say, you make a point in your gray brief. You say that really what Magerlein stands for is that all we have to do is look at the end product. Is that what you're saying? No, Judge, that's, well, I think Magerlein says a lot. I think that's quite a generalization of the law of Magerlein. In a scenario where you're claiming an intermediate and that intermediate has no practical utility, so you can't make any meaningful comparison against any other prior art intermediate or any other prior art compound that may have practical usefulness in an obviousness type analysis, that you can use the, excuse me, you can use the unexpected results of the end products because if you can show that the claimed intermediate is the contributing cause of the unexpected results of that intermediate, that end product inures the benefit of the claimed intermediate. You want to reserve the rest of your time? I will, Judge. Thank you. We will hear next from Ms. Ritchie. May it please the court. This appeal is about a deficient declaration. There is no dispute here that this declaration provides zero explanation for why leaves and products show greater toxicity. The declaration does not even suggest or let alone assert that it is the combination of the one halogen at the X position and a combination of a halogen or alkyl group at the four or six positions that causes the superior results. It is impossible to determine based on this declaration that it is leaves intermediate that causes the unexpected results. How do you respond to the argument in the reply brief that it's not necessary for the Ederlund Declaration to fill that gap because the specification makes it clear that there's no change in the intermediate through the end product? Your Honor, that's not the end of the story. Here, it is important under McGarland. McGarland requires a cause and effect relationship between the intermediates and the superior results in the end products. Even if the intermediate does not change in the reaction scheme, there is no evidence here to establish that it is the intermediate that causes the unexpected results in the end products. Give me an example of what someone would have to show in order to establish that. If they've got the intermediate that's different, they've got the intermediate not changing, and they've got unexpected results in the end product, what else would they have to show? Well, Your Honor, I think McGarland is instructive. In McGarland, there was the only structural difference between McGarland's prostaglandins, the dimethyl prostaglandins, and the prior prostaglandins was the dimethyl group at the C16 position. And that was the same difference between the dimethyl intermediate and the prior intermediate. So there was nothing else that could have caused those unexpected results. Here, the facts are different. Here, it's possible that other structural differences are causing the unexpected results. Like what? Well, if we look at the declaration itself, the best evidence is in tables A1 through A5. I'm sorry, table which was that? Tables A1 through A5, which are at appendix site A341 to 345. Here, Your Honor, Leeb is comparing its end products to Krauskopf's end products. And here, the only sole structural difference is the methyl group at the Z position. Based on this, we cannot tell whether it is a combination of the X, Y, and Z positions, the two halogens, the chlorine and the methyl group that causes the superior results, or whether it's the methyl alone, or whether it is the halogen at the Y position that causes the unexpected results. There is no way to know based on this declaration. Judge Romali, you had asked me if there was what a, you know, I can't give you what a bulletproof declaration would be, but I can say that the applicant can do a lot more than they did here. The applicant can provide a declaration that at least provides some sort of explanation as to why it is the X, Y, and Z combination that causes the unexpected results, and not the Z alone, or the combination of Y and Z, or the combination of X and Z here. So, would you have expected that the applicant would have given you a declaration or an affidavit from one skilled in the art who would describe what someone would understand based on these end result findings? Yes, Your Honor. I think that would be heading at least in the right direction. Here, there's just no explanation at all. Applicant's counsel also mentioned that the PTO required the applicant to test against Tiger, but that is simply not the case here. The board said in its decision, clearly at page 10, that we do not, I'm quoting, we do not disagree with the puns that they may compare the claimed invention with prior art that is more closely related to the invention than the prior art relied upon by the examiner. Close quote. The PTO acknowledges, as did the board, that when evidence of unexpected results are used to overcome a prima facie case, the results may be shown to be unexpected compared to the closest prior art. But here, when you are in the narrow world of McGarland, which is a narrow exception to the general rule of showing unexpected results, if you have to rely on McGarland to show unexpected results, you have already shown that your end products have superior results. What's missing here, what this declaration does not show us, is that there is a connection between the intermediate and those superior results that we see in the end products. Mr. Marlin argued that the board's statement at page 10 about MagarLine was not correct, that in that case, the intermediate had no utility other than for use as producing that one end product. What's your comment to that? Your Honor, I disagree because in MagarLine, the C-16 dimethyl intermediates only produced C-16 dimethyl prostaglandins. The prior art prostaglandin intermediates only produced the prior art prostaglandins. The intermediates were not interchangeable. Here, the applicant admits that the Steiger reference renders its claimed invention prima facie obvious. So the Leib intermediates could be used not only to make Leib's end products, but it could also be used to make Steiger's end products. So that's why this case is different from the case in MagarLine. If there are no further questions, Your Honor, I'd like to really push the rest of my time. Thank you. Thank you. Thank you for your time. Mr. Mayor, we have a little bit of time left for rebuttal. Thank you, Your Honor. A few points. First, the PTO has us look at table A-1 on page A-341. That's a great example to look at because the only difference between those two compounds is the methyl group at that sixth position of the phenyl ring. And according to the invention, that substitution pattern, two halogens at the two and the four and the methyl at the six, is exactly what's claimed in the presently claimed intermediate. That is the inventive substitution pattern, which is not explicitly taught in Steiger, but a skilled artisan would clearly say that when you have one difference, that difference must be the reason for the 90% mortality versus the 30% mortality, the results that are shown. I don't understand how it could be argued that a skilled artisan would say, well, it could be something else. I mean, the point is that substitution pattern, two halogens at the two and the four and an alkyl at the six, is exactly what's claimed. The next point I would like to make is this issue about structural obviousness versus generic obviousness, which is what the board and the PTO would like to distinguish Magerlein on. Magerlein is a case of structural obviousness. They had the two methyl groups at the C16 versus an intermediate that did not have the two methyl groups. But there's nothing in Magerlein that says that it's restricted to only cases of structural obviousness. Indeed, to rebut a case of obviousness, whether it's structural or generic, an applicant should test their claimed product against the closest prior art. Results that are unexpected can rebut a prima facie case of obviousness. That is the same whether it's a case of structural obviousness or a case of generic obviousness. There's no difference, and there's nothing in Magerlein that would suggest that there should be a difference. Thank you. Thank you, Judge. We thank both counsel. The case is submitted. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.